Steve and Linda MOY and Danny and Kelly Moy, Appellants

v.

ZONING HEARING BOARD OF THE MUNICIPALITY OF MONROEVILLE, Gene and Elsie Corl and Municipality of Monroeville.

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 2006.

Decided Dec. 5, 2006.

John M. Silvestri, Pittsburgh, for appellants.

Robert J. Wratcher, Pittsburgh, for appellee, Zoning Hearing Board of the Municipality of Monroeville.

BEFORE: FRIEDMAN, Judge, and LEADBETTER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Steve and Linda Moy and Danny and Kelly Moy (Moy) appeal from an order of the Allegheny County Court of Common Pleas that affirmed a decision of the Zoning Hearing Board of the Municipality of Monroeville (Board). In this case we consider whether the Board erred in determining that the appeal of Gene and Elsie Corl (Corl) was timely filed and whether the Board erred in requiring Moy to submit a site plan for an expansion to his restaurant.

The facts, as found by the Board, are as follows. Corl owns property along Northern Pike Road in Monroeville. Corl resides on the property and also operates a funeral home and floral business on the property. Moy owns a restaurant known as "Moy's Cove," which is also located along Northern Pike Road in Monroeville, adjacent to the Corl property.

In April 2002, Linda Moy, on behalf of Moy 4, Inc., filled out an Application for Plan Examination and Building Permit (Application) to build a "deck & patio." Supplemental Reproduced Record at 4b (Supp.R.R.——). Zoning Officer Shelly Kaltenbaugh (Zoning Officer) issued a zoning permit on or about May 1, 2002, approving construction of the proposed deck and patio. On May 2, 2002, the Municipality of Monroeville (Municipality) issued Moy a building permit for the construction of a deck at an estimated cost of $5,000. With the permit, the Municipality sent a letter stating that for the permit to be

valid, both the proposed deck and the existing restroom had to be made handicapped accessible.

Shortly after the issuance of the building permit, Corl noticed construction activity on Moy's property and made an inquiry of the Municipality about the construction permit. Corl concluded that the scope of the construction undertaken by Moy was greater than that approved and complained to the Municipality. On December 3, 2003, Carl Mihoces, the Building Official, and Paul Hugus, the Municipal Engineer, inspected the Moy property and discovered that in addition to a deck and patio, Moy had also constructed an addition of approximately 555 square feet (the Commercial Addition) to the restaurant building. Carl Mihoces instructed Moy to submit a floor plan showing the "as-built" condition at the property, including the Commercial Addition, and Moy complied. In March 2004, Carl Mihoces amended the original building permit application by writing "commercial addition" on page 1, writing "555 square feet" in Section J and recalculating the fee due to the Municipality on page 3. Reproduced Record at 14a–16a (R.R. ——). No new or revised building permit or zoning permit was issued to authorize construction of the Commercial Addition. Meanwhile, discussions continued between Corl and the Municipality regarding the Moy construction project.

On June 2, 2004, in response to an inquiry from Marshall Bond, Municipal Manager, the Zoning Officer drafted an internal memorandum summarizing the building permit history of Moy's Cove, going back to the first building permit issued in 1973. In that memorandum, she stated, *inter alia*, as follows:

> [o]n May 2, 2002, a Building Permit was issued for a deck and patio, and a commercial addition adding ADA accessible bathrooms and access to the new deck and patio area. Site Plan approval was not required for the 550 square foot addition, as it was seen as accessory and incidental to the principal use of the structure, and would bring the restaurant into compliance with ADA requirements.

R.R. 20a. This memo was placed in the file.

On or about June 7, 2004, the Municipality forwarded to Corl the contents of the development file for the Moy property. At that point, Corl discovered that the Application had been amended and discovered the Zoning Officer's June 2, 2004, memo. Corl contacted the Municipality to ask how the Application came to be amended to include information about the Commercial Addition.

On June 30, 2004, the Municipality issued a Certificate of Occupancy to Moy for the construction of the deck/patio. This certificate made no reference to the Commercial Addition. On July 9, 2004, the Municipality met with Corl to discuss the construction of the Commercial Addition and to explain how the amendments were made to the Application. In a letter to Cheryl Atticks [1] dated July 15, 2004, Marshall Bond explained that after the July 9, 2004, meeting, he interviewed Carl Mihoces and Paul Hugus. He went on to explain how the existence of the Commercial Addition was discovered in December 2003 and that Carl Mihoces was the one who revised the Application. Mr. Bond also stated in his letter that Mihoces and Hugus

> acknowledged from the date of inspection in December that the "as built" structure exceeded the "as planned" on the original application. They properly

---

1. Cheryl Atticks *is* Corl's daughter and part owner of Corl Funeral Home.

directed the interpretation and enforcement issue discovered to the Zoning Officer for disposition. The Zoning Officer made a decision.

R.R. 19a. Mr. Bond explained that the Zoning Officer decided that because the Commercial Addition did not alter the site significantly, a site plan filing was not required. Mr. Bond concluded with his advice that "[t]his interpretation [of the Zoning Officer] is appealable to the Monroeville Zoning Hearing Board." R.R. 19a.

In response, Corl's counsel sent a letter to Mr. Bond on July 23, 2004, in which he stated that Corl would appeal the determination of the Zoning Officer that no site plan approval was necessary for the Commercial Addition. On August 13, 2004, Counsel for Corl submitted a completed Notice of Appeal form to the Board.

The Board held a hearing at which Moy asserted that Corl's appeal to the Board was not timely filed. In addition, several witnesses testified, including Cheryl Atticks, Gene Corl and the Zoning Officer. The Zoning Officer explained that Moy did not submit a site plan for the Commercial Addition, which she did not believe to be necessary because in her view the addition was an "accessory structure." As such, the Zoning Officer felt that she had the power to waive the site plan requirement. The Zoning Officer was unsure of when she made that decision, but thought that it was probably in March 2004. She never communicated this decision in writing to Moy. Indeed, nothing was ever written

about the site plan decision except for the June 2, 2004, memo she sent to Mr. Bond, the Municipal Manager.

The Board determined that Corl's appeal to the Board was timely. In doing so, the Board noted that the decision not to require Moy to submit a site development plan for the Commercial Addition was apparently made part of the review process involved in the issuance of the May 2, 2002, building permit. The Board also noted that the Application and building permit were for a deck and patio, not the Commercial Addition. Indeed, the existence of the Commercial Addition was not discovered by the Municipality until December 3, 2003. The Board held that the Zoning Officer's June 2, 2004, memo did not establish the date from which Corl was obligated to appeal. Rather, the Board held that the operative date for appeal purposes was in the letter from Marshall Bond to Cheryl Atticks dated July 15, 2004, which advised Corl of what had happened and of his right of appeal. Because Corl's appeal was filed on or about August 13, 2004, within 30 days of the issuance of the letter, the Board concluded that it was timely filed.

■ On the merits, the Board held that a site plan for the Commercial Addition was required by the Ordinance. Accordingly, it ordered Moy to submit one. Moy appealed to the trial court, which affirmed the Board's decision without hearing additional evidence.[2] Moy now appeals to this Court.[3]

---

2. In August 2002, Moy had started offering entertainment at the restaurant, mostly consisting of live bands in the evening. Corl contended that this shifted the principal use of the property from a restaurant/bar to an amusement use, which required Moy to submit an application for a zoning permit accompanied by a site plan. The Board determined that the live entertainment did not change the

use of the property to an amusement use, and the trial court affirmed. In its brief, Corl asserts that a site plan should be required because there was a change of use in Moy's property. Because we affirm, we need not address this alternate basis for an affirmance.

3. Where the trial court receives no additional evidence, our standard of review is to determine whether the Board committed an abuse

Moy raises two issues on appeal. First, Moy argues that Corl failed to file a timely appeal to the Board. Second, Moy contends that the Board erred by interpreting the Ordinance to require Moy to submit a site plan for the Commercial Addition.

In considering whether Corl's appeal was timely, we begin with the operative statute. Section 914.1(a) of the Pennsylvania Municipalities Planning Code (MPC)[4] provides in relevant part:

(a) No person shall be allowed to file any proceeding with the board later than *30 days after an application for development,* preliminary or final, *has been approved by an appropriate municipal officer, agency or body* if such proceeding is designed to secure reversal or to limit the approval in any manner unless such person alleges and proves that he had no notice, knowledge, or reason to believe that such approval had been given. . . .

53 P.S. § 10914.1(a) (emphasis added). "In other words, where an objector proves he lacked notice of the issuance of a permit, the 30–day appeal period is tolled until he possesses knowledge or a 'reason to believe' the approval was granted." *Berryman v. Wyoming* Borough Zoning Hearing Board, 884 A.2d 386, 389 (Pa. Cmwlth.2005).

Moy argues that the Board and trial court erred in determining that Corl had 30 days from the date of Marshall Bond's July 15, 2004, letter to appeal. Moy contends that any one of three separate, earlier events triggered the 30–day appeal period. Specifically, Corl noticed the construction on the Moy property in 2003,[5] photographed it in 2004[6] and had knowledge of the modified building permit application on June 7, 2004. At the latest, Corl's 30–day time period began to run on June 7, 2004, when Corl discovered the hand-written amendments to the Application.[7]

In support of his argument, Moy relies on *Haaf v. Zoning Hearing Board of the Township of Weisenberg,* 155 Pa.Cmwlth. 608, 625 A.2d 1292 (1993). In *Haaf,* the zoning hearing board granted a variance for the construction of an advertising sign and, thereafter, the zoning officer issued a permit for a sign not to exceed 45 feet in height. Haaf learned of the issuance of the permit at a township planning commission meeting on December 29, 1987. On February 8, 1988, several objectors, including Haaf, appealed to the Board, challenging the validity of the permit to the extent it allowed a sign 45 feet high. The zoning hearing board determined that the appeal

of discretion or an error of law. *Feldman v. Zoning Hearing Board of City of Pittsburgh,* 89 Pa.Cmwlth. 237, 492 A.2d 468, 469 (1985).

**4.** Act of July 31, 1968, P.L. 805, *as amended,* added by the Act of Dec. 21, 1988, P.L. 1328, 53 P.S. § 10914.1(a).

**5.** The Board actually found that Corl noticed construction shortly after the permits were issued in May 2002, but Moy appears to be referencing Cheryl Atticks' testimony that she was aware of the construction of the Commercial Addition in 2003.

**6.** Cheryl Atticks testified that she photographed the Commercial Addition in March, April or May 2004.

**7.** Moy does not argue that placing the Zoning Officer's June 2, 2004, memo into the file began the statute of limitations running. The Board determined that the memo did not provide adequate notice because it indicated that the Zoning Officer decided to waive the site plan requirement for the Commercial Addition as part of the review process involved in the issuance of the May 2, 2002, building permit. However, that review process did not apply to the Commercial Addition but to a deck and patio. We agree with the Board.

was timely because it was filed within 30 days of the objectors' receipt of a copy of the board decision and a copy of the permit. This Court reversed, concluding that the appeal was not timely because Haaf knew about the issuance of the building permit on December 29, 1987, which triggered the 30–day appeal period. Id. at 1296.

Moy also relies on *Berryman.* In *Berryman,* a building permit was issued for the construction of a pole barn, and construction commenced immediately. By November 1, 2003, the construction was visible from the street and the adjoining properties. The objectors filed an appeal with the zoning hearing board on December 8, 2003, challenging the issuance of the building permit. The objectors owned property near the subject property but did not live in the area. This Court determined that because there was no notice that the permit was issued, the 30–day appeal period began to run when construction of the pole barn became visible to the public, which occurred no later than November 1, 2003. As such, the December 8, 2003, appeal was not timely. *Berryman,* 884 A.2d at 389. The Court refused to extend the appeal period for out-of-town property owners who did not see the construction on November 1, 2003. *Id.* at 389–390.

*Haaf* and *Berryman* are cases where a permit was issued prior to the commencement of construction. By contrast, the Municipality has never issued a permit for construction of the Commercial Addition. Moy applied for permission to construct a deck and patio and was issued a permit for the construction of a deck and patio. When Corl saw construction in 2003, there was no permit to appeal because the Municipality had not issued a permit for the construction of the Commercial Addition. Indeed, the Municipality itself did not even

know of the existence of the Commercial Addition until the end of that year. When Corl photographed the construction in March, April or May 2004, the appeal period still did not begin running because there were still no issued permits for the Commercial Addition.

We also disagree with Moy's assertion that Corl's examination of the file on June 7, 2004, triggered the 30–day appeal period. In *Mars Area Residents for a Safe Community v. Zoning Hearing Board of Adams Township,* 108 Pa.Cmwlth. 505, 529 A.2d 1198, 1200 (1987), we explained that "an application which is misleading [is] tantamount to fraudulent and such a misrepresentation could constitute lack of notice." Here, the file contained Carl Mihoces' hand-written changes to Moy's Application to include "Commercial Addition" and "555 square feet." R.R. 14a. The improvement was described as an "alteration;" however, the box on the Application indicating "addition" was not checked off. Id. Further, these changes were made *after* the application was approved. In short, the "amended" Application was misleading in addition to being incorrectly, and untimely, completed. Because Corl did not know who made the changes, or how they got there, we cannot agree with Moy's assertion that simply viewing the amended Application gave Corl notice of permit approval.

Further, it is important to note that after the Application was altered by Carl Mihoces, no new permit of any kind was issued. Indeed, Moy was never given express approval to construct the Commercial Addition or permission to build without site plan approval. Until Corl received the letter of July 15, 2004, he had no reason to know that the Municipality would treat the after-the-fact amendments to Moy's Application as a constructive approval.

We agree with the Board and trial court that Corl's appeal was timely. Section 914.1(a) of the MPC states that the appeal period to the Board is 30 days after an application for development has been approved unless the objector alleges and proves that he had no notice, knowledge, or reason to believe that such approval had been given. 53 P.S. § 10914.1(a). Moy did not apply for a permit for the Commercial Addition and did not request a waiver from the site plan approval for the Commercial Addition. After-the-fact amendments were made to the Application and after-the-fact rationales were stated for not requiring site plan approval. We agree with the Board that the first time that these "approvals" became known to Corl was in Marshall Bond's July 15, 2004, letter to Corl's daughter. Thus, the 30–day appeal period began to run as of July 15, 2004, making the appeal of August 13, 2004, timely.

■ Moy's second issue is that the Board and the trial court erred in interpreting the Zoning Ordinance to require Moy to submit a site plan for the Commercial Addition. Moy argues that both Section 306 and Section 305.1 of the Ordinance contain applicable exceptions from site plan review requirements. We disagree.

The Zoning Ordinance is dispositive. It states in relevant part, as follows:

305 ACCESSORY USES AND STRUCTURES: The following provisions shall apply to accessory uses and structures:

305.1 A Zoning Occupancy Permit shall be required for every accessory use or structure. *A review of the proposed site plan* as required in § 306 *shall be required for uses or structures accessory to any principal uses* other than one-family houses, town houses and two-family houses, *except where in the judgment of the Zoning Officer the accessory use or structure does not affect or alter the site* in any significant way.

\* \* \*

306 SITE PLAN REVIEW: *No Zoning Permit or Zoning Occupancy Permit shall be issued* for any use upon any lot except a one-family home *until a Site Development Plan has been submitted, reviewed and approved* in accordance with the following provisions, *provided however* that existing structures where the occupancy is being changed without any change in use category or new construction or *addition to structures and without change in the site are exempt* from this requirement.

\* \* \*

502 ZONING PERMIT: A Zoning Permit shall be obtained pursuant to provisions in Article Three before any person may:

\* \* \*

502.2 Construct, reconstruct, move, alter, or *enlarge any structure or building* . . .

\* \* \*

502.4 *Applications for the Zoning Permit shall be accompanied by a site plan* showing clearly and completely the location, dimensions, and nature of any structure involved, and such other information as the Zoning Officer may require for administration of this Ordinance, together with the filing fee in accordance with the schedule annually affixed by resolution of the Council.

MONROEVILLE ZONING ORDINANCE · §§ 305, 306, 502; R.R. 62a, 99a. The Ordinance defines "Accessory Structure" as:

A subordinate structure, located on the same lot as the main structure, or a portion of the main structure, the use of which is clearly incidental to and customarily found in connection with the main structure or principal use of the land.

*Id.* at § 601; R.R. 107a. In sum, an application to "enlarge any structure" requires a zoning permit and site plan. The construction of an accessory structure also requires a zoning permit and site plan filing unless in the Zoning Officer's judgment, the accessory structure is not significant. Before this discretion can be exercised, however, the structure in question must be found to be an accessory structure.

The Zoning Officer stated that she believed the Commercial Addition was an "accessory structure" within the meaning of Section 305 of the Ordinance because it was a "subordinate structure." The Board, however, determined that the Commercial Addition was not a separate structure but, rather, an enlargement of the main structure that changed the site by changing the restaurant's footprint.[8] As such, the Board concluded that the Commercial Addition was not an "accessory structure." We agree with the Board's conclusion that the Commercial Addition was not an accessory structure and, therefore, the Zoning Officer lacked any foundation for her decision to waive a site plan filing.

The Board and trial court did not err in holding that a site development plan was required for the Commercial Addition, which enlarged the main restaurant building thereby changing the site. Accordingly, Moy was appropriately ordered to file a site development plan for the Commercial Addition in accordance with Section 306 of the Ordinance.[9]

Accordingly, we affirm the trial court.

Judge LEADBETTER dissents.

### ORDER

AND NOW, this 5th day of December, 2006, the order of the Court of Common Pleas of Allegheny County dated December 9, 2005, in the above-captioned matter is hereby affirmed.

---

8. Paul Hugus and Carl Mihoces both testified that the Commercial Addition is part of the main building and is an open floor extension of the dining room that also included a hallway and storage room.

9. In his brief, Corl argues that even if Moy's Cove fit into the exception for site plan review found in Section 305.1 of the Ordinance, Section 305.1 applies only to zoning occupancy permits. Moy would still have to obtain a zoning permit, which would require site plan approval. Corl appears to be correct.